# UNITED STATES DISTRICT COURT
for the
**Eastern District of Kentucky**
**Lexington Division**

| | | |
|---|---|---|
| Nathan McKinney | ) | |
|    *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| Ally Financial, Inc. | ) | |
|    *Defendant* | ) | |
| Serve: | ) | |
|    CT Corporation System | ) | |
|    306 W. Main Street, Suite 512 | ) | |
|    Frankfort, KY 40601 | ) | |
| | ) | |
| Capital One Auto Finance, Inc. | ) | |
|    *Defendant* | ) | |
| Serve: | ) | |
|    Corporation Service Company | ) | |
|    211 E. 7th Street, Suite 620 | ) | |
|    Austin, TX 78701 | ) | |
| | ) | |
| Chrysler Capital | ) | |
| *Assumed name for* | ) | |
| Santander Consumer USA Inc. | ) | |
|    *Defendant* | ) | |
| Serve: | ) | |
|    CT Corporation System | ) | |
|    306 W. Main Street, Suite 512 | ) | |
|    Frankfort, KY 40601 | ) | |
| | ) | |
| PNC Bank, National Association | ) | |
|    *Defendant* | ) | |
| Serve: | ) | |
|    PNC Bank, National Association | ) | |
|    222 Delaware Avenue | ) | |
|    Wilmington, DE 19899 | ) | |
| | ) | |
| Santander Consumer USA, Inc. | ) | |
|    *Defendant* | ) | |
| Serve: | ) | |
|    CT Corporation System | ) | |
|    306 W. Main Street, Suite 512 | ) | |
|    Frankfort, KY 40601 | ) | |
| | ) | |

| | |
|---|---|
| Wells Fargo Dealer Services, Inc. | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     Corporation Service Company | ) |
|     2710 Gateway Oaks Drive | ) |
|     Suite 150N | ) |
|     Sacramento, CA 95833 | ) |
| | ) |
| Serve: | ) |
|     Corporation Service Company | ) |
|     327 Hillsborough Street | ) |
|     Raleigh, NC 27603 | ) |
| | ) |
| Morgan & Pottinger, P.S.C. | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     John T. McGarvey | ) |
|     401 S. Fourth Street, Suite 1200 | ) |
|     Louisville, KY 40202 | ) |

## **COMPLAINT and DEMAND FOR JURY TRIAL**

1. This is an action for violations of the Fair Credit Reporting Act ("FCRA") for obtaining Plaintiff's credit report for an impermissible purpose.

### **JURISDICTION**

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and the FCRA, 15 U.S.C. § 1681p.

### **PARTIES**

3. Plaintiff Nathan McKinney is a natural person who resides in Jessamine County, Ky. Mr. McKinney is a "consumer" within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(3), and a "person" within the meaning of the KCPA, as defined at 367.110(1).

4. Defendant Ally Financial, Inc. ("Ally") is a Delaware corporation registered with Kentucky Secretary of State and doing business in Kentucky. Ally's principal place of business is located at 500 Woodward Avenue, 10th Floor, Detroit, MI 48226. Ally is a "user" of consumer reports within the meaning of the FCRA.

5. Defendant Capital One Auto Finance, Inc. ("COAF") is a Texas corporation which is not registered with Kentucky Secretary of State. COAF's principal place of business is located

at 211 E. 7th Street, Suite 620, Austin, TX 78701. COAF is a "user" of consumer reports within the meaning of the FCRA.

6. Defendant Chrysler Capital, assumed name for Santander Consumer USA, Inc. ("Chrysler Capital") is a Texas corporation which is registered with Kentucky Secretary of State. Chrysler Capital's principal place of business is located at 8585 N. Stemmons Freeway, Dallas, TX 75247. Chrysler Capital is a "user" of consumer reports within the meaning of the FCRA.

7. Defendant PNC Bank, National Association ("PNC") is a national bank regulated by the Office of the Comptroller of the Currency with its headquarters located at 222 Delaware Avenue, Wilmington, DE 19899. PNC is a "user" of consumer reports within the meaning of the FCRA.

8. Defendant Santander Consumer USA, Inc. ("Santander") is a Texas corporation which is registered with Kentucky Secretary of State. Santander's principal place of business is located at 1601 Elm Street, Suite 800, Dallas, TX 75201. Santander is a "user" of consumer reports within the meaning of the FCRA.

9. Defendant Wells Fargo Dealer Services, Inc. ("WFDS") is a California corporation not registered with the Kentucky Secretary of State. Wells Fargo's principal offices are located at 23 Pasteur, Irvine, CA 92618. Wells Fargo is a "user" of consumer reports within the meaning of the FCRA.

10. Defendant Morgan & Pottinger, P.S.C. ("M&P") is a domestic professional services corporation registered with the Kentucky Secretary of State with its principal office located at 401 S. Fourth Street, Suite 1200, Louisville, KY 40202. M&P is a "user" of consumer reports within the meaning of the FCRA.

## STATEMENT OF FACTS

### Claims against Defendant Lenders:
### Ally, COAF, Chrysler Capital, PNC, Santander, and WFDS

**I.    Facts Relating to Hard Credit Pulls on October 15, 2016**

11. On or about October 15, 2016, Mr. McKinney and his wife visited Glenn's Dodge Chrysler Jeep Ram ("Glenn's Dodge") to look at a Nissan Murano automobile for his wife.

12. The McKinneys have been working diligently to improve their credit report and credit score.

13. Mr. McKinney desired to finance the Nissan Murano purchase but was very cautious about applying for credit because he was aware that applying for credit would result in hard-credit inquiries that would lower his credit score and make it more difficult to obtain credit in the future.

14. Because Mr. McKinney's wife's vehicle was in an upside-down loan with a high payment, the McKinneys believed that the chance of getting credit to put them in a better financial position was worth the risk of applying for credit.

15. Mr. McKinney gave Glenn's Dodge permission to only pull his credit report in connection with his application for credit to purchase a Nissan Murano (the "Credit Application"), and strictly limited that permission to no more than two potential lenders.

16. Mr. McKinney's permission to Glenn's Dodge in connection with the Credit Application only extended to an application for credit to purchase the Nissan Murano.

17. Mr. McKinney did not want Glenn's Dodge to shop his Credit Application around to other lenders.

18. The McKinneys' Credit Application for the Nissan Murano was denied.

19. The McKinneys left Glenn's Dodge after their Credit Application was denied.

20. Either later that day or the next day, Mr. McKinney received a phone call from Glenn's Dodge informing him that he had been approved for credit for the purchase of a Jeep Cherokee.

21. Mr. McKinney had not looked at, expressed interest in, or applied for credit for the purchase of a Jeep Cherokee's at Glenn's Dodge.

22. Mr. McKinney was surprised, confused, and alarmed by the phone call letting him know that he was approved for credit for which he did not apply.

23. Soon after the phone call, Mr. McKinney reviewed his consumer credit report. To his dismay, he discovered hard inquiries by all of the defendant lenders and banks all made on October 15, 2016.

24. Mr. McKinney, by counsel, sent Glenn's Dodge a letter asking for the credit application made by Mr. McKinney on October 15, 2016.

25. In response, Glenn's Dodge sent a credit application for a Jeep Cherokee.

26. The Jeep Credit Application contains personal information about Mr. McKinney and his wife.

27. The Jeep Credit Application is not signed.

28. The credit application included the following section titled "AGREEMENT":

> **AGREEMENT**
> You understand and agree that you are applying for credit by providing the information to complete and submit this credit application. We may keep this application and any other application submitted to us and information about you whether or not the application is approved. You may certify that the information on the application and in any other submitted to us, is true and complete. You understand that false statements may subject to you to criminal penalties. The words "you," and "yours" mean each person submitting this application. The words "we," "us," "our" and "ours" as used below refer to us, the dealer, and to the financial institution(s) selected to receive your application. You authorize us to submit this application and any other application submitted in connection with the proposed transaction to the financial institutions disclosed to you by us the dealers. This application will be reviewed by such financial institutions on behalf of themselves and us the dealer. In addition, in accordance with the Fair Credit Reporting Act, you authorize that such financial institutions may submit your applications to other financial institutions for the purpose of fulfilling your request to apply for credit. You agree that we may obtain a consumer credit report periodically from one or more consumer reporting agencies (credit bureaus) in connection with the proposed transaction and any update, renewal, refinancing, modification or extension of that transaction. You also agree that we or any affiliate of ours may obtain one or more consumer credit reports on you at any time whatsoever. If you ask, you will be told whether a credit report was requested, and if so, the name and address of any credit bureau from which we or our affiliate obtained your credit report. You further authorize us to gather whatever credit and employment history we consider necessary and appropriate in evaluating this application and any other applications submitted in connection with the proposed transaction. You understand that we will rely on the information in this credit application in making our decision. We may monitor and record telephone calls regarding your account for quality assurance, compliance, training, or similar purposes.
>
> By providing your cell phone number on this application, you are consenting to receive servicing and collection calls on your cell phone using an auto dialer or a prerecorded message. This consent applies to the dealer, who is the originating creditor in this transaction, as well as any assignee who may purchase your credit contract from the dealer.

29. Consistent with the language from the above AGREEMENT, the Jeep Credit application included a line for disclosing which financial institutions that were authorized under the application to request Mr. McKinney's consumer credit report:

> This application may be submitted to the following financial institutions [Name(s) and Address(es)] _____
> _____
>
> BY SIGNING BELOW, YOU CERTIFY THAT YOU HAVE READ AND AGREE TO THE TERMS AND DISCLOSURES ON THE PAGES OF THIS APPLICATION.
>
> X _____     X _____
>   APPLICANT'S SIGNATURE   DATE      CO-APPLICANT'S SIGNATURE   DATE

30. The above disclosure in the Jeep Credit Application is blank and unsigned.

31. Much to Mr. McKinney's dismay, not only did Glenn's Dodge make a hard credit inquiry for Mr. McKinney's consumer credit report, but so did the six other lender Defendants Ally, COAF, Chrysler Capital, PNC, Santander, and WFDS.

32. The numerous hard inquiries caused a precipitous drop in Mr. McKinney's credit score.

## II. Mr. McKinney did Not Initiate a Credit Transaction with Defendant Lenders

33. The credit application with Glenn's Dodge provides in pertinent part:

> You understand and agree that you are applying for credit by providing the information to complete and submit this credit application….You authorize us to submit this application and any other application submitted in connection with the proposed transaction to the **financial institutions disclosed by us the dealers.** This application will be reviewed by such financial institutions on behalf of themselves and us the dealer. In addition, in accordance with the Fair Credit Reporting Act, you authorize that such financial institutions may submit your applications to other financial institutions for the purpose of fulfilling your request to applications to apply for credit….**You also agree that we or any affiliate of ours may obtain one of more consumer credit reports on you at anytime whatsoever.**

Bolding added.

34. The credit application only permits Glenn's Dodge to submit the Jeep Credit Application to "**financial institutions disclosed by us the dealers.**" Glenn's Dodge did not disclose any recipients of the credit application. More importantly, Mr. McKinney did not sign the credit application. Most importantly, Glenn Dodge submitted the Jeep Credit Application to the Defendant lenders without his permission or knowledge.

35. Thus, Mr. McKinney did not authorize Glenn's Dodge to submit his credit application to any of the defendant lenders: Ally, COAF, Chrysler Capital, PNC, Santander, and WFDS. Nevertheless, Glenn's Dodge submitted the credit application to all six of these defendants without Mr. McKinney's permission, authorization, or knowledge. Therefore, Mr. McKinney did not initiate a credit transaction with any of the defendant lenders: Ally, COAF, Chrysler Capital, PNC, Santander, or WFDS.

## III. Ally, COAF, Chrysler Capital, PNC, Santander, and WFDS did not obtain Mr. McKinney's Credit Report Pursuant to a Permissible Purpose

36. Ally, COAF, Chrysler Capital, Santander, PNC and WFDS each requested and obtained a copy of Mr. McKinney's consumer credit report on October 15, 2016.

37. Each pull of Mr. McKinney's credit report by Ally, COAF, Chrysler Capital, Santander, PNC, and WFDS resulted in a "hard credit inquiry" on Mr. McKinney's credit report.

38. The FCRA does not expressly address hard and soft credit inquiries. Nevertheless, the distinction between hard and soft inquires springs from 15 U.S.C. §1681b(c)(3), which provides:

> Information regarding inquiries
>
> Except as provided in section 1681g(a)(5)[1] of this title, a consumer reporting agency *shall not furnish* to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer.

Emphasis added.

39. For all intents and purposes, "hard inquiries" are inquiries that a consumer reporting agency are not prohibited from disclosing to third-party users under 15 U.S.C. §1681b(c)(3). "Soft inquiries" are all other types of inquiries, which 15 U.S.C. §1681b(c)(3) prohibits consumer reporting agencies from disclosing to third-party users. This can be seen by the consumer reporting agencies' explanations as to the differences between the two.

40. Consumer reporting agencies classify every user's request to see a consumer report as either a "hard" or "soft" credit inquiry, depending on the type of inquiry made by the requesting party.

41. As explained on the Credit Karma[2] website:

> There are two kinds of inquiries that can occur on your credit report: hard inquiries and soft inquiries. While both types of credit inquiries enable a third party, such as you or a lender, to view your credit report, only a hard inquiry can negatively affect your credit score.
>
> **What is a Hard Inquiry?**
> Hard inquiries occur when a financial institution, such as a lender or credit card issuer, checks your credit report **when making a lending decision.** For example, hard inquiries commonly take place **when a**

---

[1] 15 U.S.C. §1681g concerns the disclosure of a consumer's credit file to the *consumer* and not to third-party users.

[2] Trans Union runs and maintains the Credit Karma website.

**consumer applies for a loan, credit card, or mortgage. You typically have to authorize a hard inquiry.** Most important to note, hard inquiries will lower your credit score by a few points and remain on your credit report for two years. As time passes, the damage to your credit score will decrease until the hard inquiry falls off your credit report.

**What is a Soft Inquiry?**

Soft inquiries occur when a person or company checks your credit report as a background check, such as when a potential employer checks your credit, when you are "pre-approved" for credit card offers, and when you check your own credit score. **A soft inquiry can occur without your permission.** Soft inquiries may be recorded in your credit report, depending on the credit bureau, but they won't affect your credit score in any way.[3]

42. As explained on Equifax's website:

**What is a hard inquiry?**

When a lender or company makes a request to review your credit report as part of the loan application process, that request is recorded on your credit report as a hard inquiry, and it usually will impact your credit score. This is different from a soft inquiry, which can result when you check your own credit or when a promotional credit card offer is generated. Soft inquiries typically do not impact your credit score.

**Hard inquiries serve as a timeline of when you have applied for new credit** and may stay on your report for up to 24 months. Depending on your unique credit history, they could indicate different things to different lenders.

**Recent hard inquiries on your credit report tells a lender that you are currently shopping for new credit**. This may be meaningful to a potential lender when assessing your creditworthiness.[4]

---

[3] https://www.creditkarma.com/article/hard_inquiries_and_soft_inquiries (visited September 26, 2016) (bolding added).

[4] https://blog.equifax.com/credit/understanding-hard-inquiries-on-your-credit-report (visited March 4, 2017) (bolding and underling added).

43. And is explained on the myfico.com[5] website,

> Credit inquiries are requests by a "legitimate business" to check your credit.
>
> As far as your FICO® score is concerned, credit inquiries are classified as either "hard inquiries" or "soft inquiries"–**only hard inquiries have an affect on your FICO score.**
>
> Soft inquiries are all credit inquiries where your credit is NOT being reviewed by a prospective lender. These include inquiries where you're checking your own credit (such as checking your score in myFICO), credit checks made by businesses to offer you goods or services (such as promotional offers by credit card companies), or inquiries made by businesses with whom you already have a credit account.
>
> **Hard inquiries are inquiries where a potential lender is reviewing your credit because you've applied for credit with them**. These include credit checks when you've applied for an auto loan, mortgage or credit card. . . . **A FICO score takes into account only *voluntary* inquiries that result from your application for credit.** The information about inquiries that can be factored into your FICO score includes:
>
> - Number of recently opened accounts, and proportion of accounts that are recently opened, by type of account.
> - Number of recent credit inquiries.
> - Time since recent account opening(s), by type of account.
> - Time since credit inquiry(ies).
> - **A FICO score does not take into account any involuntary inquiries made by businesses with whom you did not apply for credit**, inquiries from employers, or your own requests to see your credit report.[6]

---

[5] "myFICO is the consumer division of FICO. Since its introduction 20 years ago, the FICO® Score has become a global standard for measuring credit risk in the banking, mortgage, credit card, auto and retail industries. **90 of the top 100 largest U.S. financial institutions use the FICO Score to make consumer credit decisions**." http://www.myfico.com/Guest_Home.aspx (visited July 27, 2013) (bolding added).
[6] www.myfico.com/crediteducation/questions/inquiry-credit-score.aspx (visited July 26, 2013) (bolding added).

44. Whether a consumer reporting agency or FICO categorizes a credit inquiry as "hard" or "soft" depends directly on the user of the report and whether the user classifies its request as a voluntary or involuntary request, *i.e.* whether the request was made in connection with a credit transaction initiated by the consumer.

45. The inquiries for Mr. McKinney's consumer report made by Ally, COAF, Chrysler Capital, PNC, Santander, and WFDS were all involuntary, *i.e.* Mr. McKinney did not initiate a credit transaction with any of these lenders by applying for credit with any of these lenders.

46. Nonetheless, consumer reporting agencies classified the inquiries for Mr. McKinney's credit report made by Ally, COAF, Chrysler Capital, PNC, Santander, and WFDS as "hard inquiries."

47. Each inquiry made by Ally, COAF, Chrysler Capital, PNC, Santander, and WFDS for Mr. McKinney's credit report on October 15, 2016 was made for an impermissible purpose because each request was purportedly and falsely made in connection with an affirmative request for credit made by Mr. McKinney, but Mr. McKinney did not request credit from Ally, COAF, Chrysler Capital, PNC Santander, or WFDS on October 15, 2016.

48. Each impermissible hard credit inquiry damaged Mr. McKinney by lowering his credit score and making it harder for him to qualify for credit. Additionally and as a result, Mr. McKinney retained and paid a credit repair expert for purposes of removing false and incorrect information from his credit report, including each of the erroneous hard credit inquiries by Ally, COAF, Chrysler Capital, PNC, Santander, and WFDS.

### Claims against Morgan & Pottinger, P.S.C.

49. On August 8, 2014, Morgan & Pottinger, P.S.C. ("Morgan & Pottinger")—on behalf of its client LVNV Funding, LLC—filed suit against Mr. McKinney in Jessamine District Court in Case No. 14-C-00798.

50. On September 5, 2014, Fenton & McGarvey Law Firm, P.S.C. ("Fenton") entered a substitution of counsel for Morgan & Pottinger.

51. On April 21, 2015, the parties entered into an agreed judgment.

52. Fenton served a wage garnishment on Mr. McKinney's employer on or about July 8, 2015.

53. The wage garnishment soon satisfied the agreed judgment amount in full. On September 14, 2015, Fenton filed a satisfaction of judgment on behalf of LVNV in the Jessamine District Court case.

54. On March 29, 2016, Morgan & Pottinger requested Mr. McKinney's consumer credit report from Trans Union, presumably for purposes of collection of the satisfied agreed judgment with LVNV.

55. Because the agreed judgment had been paid in full by or before September 14, 2015, Morgan & Pottinger did not have a permissible purpose for requesting Mr. McKinney's Trans Union consumer credit report on March 29, 2016.

56. Mr. McKinney's consumer credit report is replete with sensitive personal information. The unauthorized release of Mr. McKinney's consumer credit reports to Morgan & Pottinger was highly offensive to Mr. McKinney, as it would be to any other reasonable person.

**CLAIMS FOR RELIEF**

**I.   Claims against the Lender Defendants**

57. Ally, COAF, Chrysler Capital, PNC, Santander, and WFDS knowingly and intentionally violated the FCRA by requesting Mr. McKinney's consumer report for an impermissible purpose, *i.e.* by requesting Mr. McKinney's consumer credit report in connection with a credit transaction that Mr. McKinney did not initiate, did not authorize, and did not have knowledge of. Therefore, Ally, COAF, Chrysler Capital, PNC, Santander, and WFDS are each liable to Mr. McKinney for statutory damages of $1,000 or the actual damages he has sustained by reason of each's violation of the FCRA, whichever is greater, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

Or, in the alternative,

66. Ally, COAF, Chrysler Capital, PNC, Santander, and WFDS each negligently violated the FCRA by requesting Mr. McKinney's consumer report for an impermissible purpose, *i.e.* by requesting Mr. McKinney's consumer credit report in connection with a credit transaction that Mr. McKinney did not initiate, did not authorize, and did not have knowledge of. Therefore, Ally, COAF, Chrysler Capital, PNC, Santander, and WFDS are each liable to Mr. McKinney for actual damages he has sustained by reason of each financial institution's violation of the FCRA, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681o.

## II. Claims against Morgan & Pottinger, P.S.C.

67. Morgan & Pottinger knowingly and intentionally violated the FCRA by requesting Mr. McKinney's consumer report for an impermissible purpose, *i.e.* by requesting Mr. McKinney's consumer credit report in connection with stated purpose of account review or account collection for an account that had been paid and no longer existed. Therefore, Morgan & Pottinger is liable to Mr. McKinney for statutory damages of $1,000 or the actual damages he has sustained by reason of its violation of the FCRA, whichever is greater, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

Or, in the alternative,

68. Morgan & Pottinger negligently violated the FCRA by requesting Mr. McKinney's consumer report for an impermissible purpose, *i.e.* by requesting Mr. McKinney's consumer credit report in connection with stated purpose of account review or account collection for an account that had been paid and no longer existed. Therefore, Morgan & Pottinger is liable to Mr. McKinney for actual damages he has sustained by reason of Morgan & Pottinger's violation of the FCRA, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Nathan McKinney, requests the following relief:

1. Award Plaintiff actual damages;

2. Award Plaintiff statutory damages;

3. Award Plaintiff punitive damages;

4. Award Plaintiff reasonable attorney's fees;

5. Award Plaintiff costs;

6. A trial by jury on all issues so triable; and

7.       Such other relief as may be just and proper.

Respectfully submitted,

/s/ James McKenzie
**James McKenzie**
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Avenue, Suite 4
Louisville, KY 40207
Tel:    (502) 371-2179
Fax:   (502) 257-7309
jmckenzie@jmckenzielaw.com

**James H. Lawson**
*Lawson at Law, PLLC*
115 S. Sherrin Avenue, Suite 4
Louisville, KY 40207
Tel:    (502) 473-6525
Fax:   (502) 473-6561
james@kyconsumerlaw.com